Merrick, J.
This motor vehicle tort action was brought by the plaintiff, Heather Chamberland (“Chamberland”), after a failed effort by her attorney and defendant Dylon J. Maiorano’s (“Maiorano”) motor vehicle liability insurer, Liberty Mutual Insurance Company (“Liberty Mutual”), to resolve the matter by entering into a “high-low” arbitration agreement. Chamberland has appealed a final judgment for Maiorano ordering Chamberland to “proceed to binding arbitration with parameters of $5,000.00 low and $40,000.00 high.”
After a motor vehicle accident on July 16,2007 between vehicles operated by the parties here, Chamberland’s attorney, Ronald J. Resmini (“Attorney Resmini”), made demand upon Liberty Mutual and, beginning in March of 2008, entered into settlement negotiations. On August 20, 2009, Liberty Mutual’s adjuster proposed to Attorney Resmini that the parties resolve the claim by entering into binding arbitration with “high-low” parameters of $30,000.00 and $5,000.00.
Both the attorney and the adjuster understood, as would anyone in the legal or insurance claims profession, that this meant that the case would be submitted to an arbitrator for a final binding decision, but that Chamberland would not recover less than $5,000.00 and Liberty Mutual would not pay more than $30,000.00. Attorney Resmini countered with a proposed “high-low” between $45,000.00 and $5,000.00, and the two agreed upon parameters of $40,000.00 and $5,000.00.
There was no discussion between Attorney Resmini and Liberty Mutual’s adjuster as to whether this agreement was subject to approval by their principals.
On September 3, 2008, Attorney Lili K Geller (“Attorney Geller”), Liberty Mutual’s staff attorney assigned to arrange, and represent Maiorano at, the arbitration, forwarded an arbitration agreement to Attorney Resmini, with the request that he “return the document once signed and/or contact me to discuss any proposed changes.” The agreement, as drafted, required signatures by both counsel and Chamberland. Attorney Geller sent out a discovery-type document request at the same time, and Attorney Resmini responded to it during the month of September. The arbitration agreement was never returned.
On October 13, 2009, Attorneys Resmini and Geller discussed the choice of arbitrator and eventually agreed upon retired Judge James W. Dolan of Babik Dispute Resolution Services (“Babik”). The case was scheduled for arbitration on November 9,2009; and, sometime before October 22,2009, Babik sent out another form of arbi *238 tration agreement, a “high-low” agreement, a fee schedule, and an invoice, charging each party $400.00. On October 22,2009, Attorney Resmini sent back the Babik arbitration agreement form, signed by himself, a conflict disclosure form also signed by him, and a check for $400.00.
Attorney Resmini called Attorney Geller on October 30, 2009 and told her that Chamberland was unwilling to go forward with the arbitration as she believed the “high” of $40,000.00 was too low, given the Personal Injury Protection (“PIP”) offset of $7,532.00.
The arbitration did not take place, and, on February 3, 2010, Attorney Resmini commenced this action. Maiorano ultimately[1] and successfully moved for a final judgment in his favor that incorporated an order to arbitrate, which Chamberland has appealed.
Both parties treat the claimed “high-low” arbitration agreement as a settlement, conjuring with cases on the subject of whether, and when, an attorney has authority to settle a case. Certainly neither has briefed, or argued, that a “high-low” arbitration agreement does not constitute a sort of settlement. While the issue has not been considered by an appellate court in Massachusetts, the “high-low” aspect of such an agreement at least has been held elsewhere to be a type of “settlement.” Fiegener v. Freeman-Oak Hill Health Sys., 996 S.W.2d 767, 771-773 (Mo. Ct. App. 1999) (“high-low” agreement constituted settlement); Malick v. Seaview Lincoln Mercury, 940 A.2d 1221, 1225 (N.J. Super. 2008) (“[A] high-low agreement is a type of settlement.”); Shafer v. Cronk, 532 A.2d 1131, 1133 (N.J. Super. 1987); New York Cent. Mut. Fire Ins. Co. v. Farm Family Mut. Ins. Co., 231 A.D.2d 722, 723 (N.Y. App. Div. 1996) (“high-low” arbitration is “functional equivalent” of settlement); Power v. Tomarchio, 701 A.2d 1371, 1373 (Pa. Super. 1997).
The powers of an attorney representing a party in a case do not include the power to agree to a compromise settlement of it in an agreement for judgment. Precious v. O’Rourke, 270 Mass. 305, 308 (1930). This would seem to be all the more true in a case not yet put in suit.
More to the point, the question of whether an attorney has authority to bind a client by his action does not depend upon whether the action falls within some definition of the word “settlement.” “While an attorney has broad powers in respect to the management and prosecution of a case affecting the remedy, he cannot do things which impair the cause of action without specific authority from his client.” Friedberg v. Jablon, 287 Mass. 510, 514-515 (1934) (attorney for assignee plaintiff lacked authority for partial release of defendant). A “high-low” agreement is certainly one that would “impair the cause of action.”[2] Id.
Maiorano makes a two-step attempt to circumvent the rule by stating the general principle that knowledge of an agent is imputed to the principal, Flynn v. Wallace, 359 Mass. 711, 717 (1971), and then arguing that, since Chamberland did not personal *239 ly repudiate the “high-low” arbitration agreement as soon as she imputedly knew of it, she must be held to have ratified it. In both cases relied on for that proposition by Maiorano, however, the party to be charged with a duty to disaffirm an unauthorized act had gained actual, as opposed to imputed, knowledge of the act. Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 18 (1997); Boice-Perrine Co. v. Kelley, 243 Mass. 327, 330-331 (1923). It would be futile, surely, to require a party with imputed knowledge to repudiate an act of which that party was unaware. “The meaning of ratification is, and always has been, the adoption of an act purporting to be done, or, at least, done in fact, on behalf of the ratifier.” Hosher-Platt Co. v. Miller, 238 Mass. 518, 524-525 (1921), quoting New England Dredging Co. v. Rockport Granite Co., 149 Mass. 381, 382 (1889).
Accordingly, the judgment for defendant Maiorano and the allowances of both his motion for final judgment and motion to compel arbitration are vacated, and this case is returned to the Taunton Division of the District Court Department for trial.
So ordered.

 Maiorano first obtained an interlocutory order requiring Chamberland to arbitrate. Chamberland’s appeal to this Division was denied as interlocutory.

 As our decision is based upon the “high-low” portion of the agreement, we do not consider the question of an attorney’s authority, absent specific authorization, to enter into binding arbitration.