**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0992-23

SENSOR PRODUCTS, INC.,
a corporation, and JEFFREY
STARK, an individual,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

MEHMET SAKMAN,
an individual,

      Defendant-Respondent/
      Cross-Appellant.

_____

Submitted December 4, 2024 – Decided February 12, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2044-21.

Resnick Law Firm, LLC, attorneys for appellants/cross-respondents (Steven M. Resnick, on the briefs).

Pashman Stein Walder Hayden, PC, attorneys for respondent/cross-appellant (Bruce S. Rosen, of counsel and on the briefs; Joshua P. Law, on the briefs).

PER CURIAM

Plaintiffs Sensor Products, Inc. and Jeffrey Stark appeal from the trial court's December 1, 2023 order granting attorney's fees to defendant Mehmet Sakman as a prevailing party pursuant to an employment agreement between plaintiffs and defendant. Based on our review of the record, the parties' briefs, and the applicable legal principles, we reverse.[1]

I.

Stark owns Sensor Products Inc., which is in the business of manufacturing and selling pressure sensors. In September 2019, plaintiffs hired defendant as an order fulfillment specialist. Defendant entered into several agreements regarding his employment, including a master employment agreement. Section 4(B) of the employment agreement, in relevant part, states the "[e]mployee agrees to adhere by all of the policies . . . set forth . . . [in] the [e]mployee [h]andbook." The employee handbook, in pertinent part, provides that the employee "agrees to refrain from . . . posting any unfavorable, or critical reviews on any websites about Sensor Products and/or [its] employees during and after employment." Defendant also executed a non-compete, non-

---

[1] Because we reverse the trial court's order, we need not consider defendant's cross-appeal from the same order arguing the court erred in reducing the attorney fees requested.

2                                                                          A-0992-23

solicitation, and confidentiality agreement (the "confidentiality agreement") prohibiting him from disclosing confidential information about plaintiffs. Section six of the employment agreement states that the "[e]mployee and [e]mployer agree that should any action be instituted by either party against the other regarding the enforcement of the terms of this agreement, the prevailing party will be entitled to all of its expenses related to such litigation including . . . reasonable attorneys' fees . . . both before and after judgment."

In August 2021, Sensor terminated defendant's employment. Later that month an anonymous former employee posted a negative review about plaintiffs on Glassdoor.com.[2] Plaintiffs concluded that defendant posted the negative review.[3] On August 20, 2021, plaintiffs sent a pre-suit demand letter to defendant, demanding he take down the negative review. The letter, in relevant part, stated:

> As you know, Sensor maintains a policy that prohibits you, after your employment ends, from posting any unfavorable or critical reviews on any website about Sensor or any of its employees. Despite this prohibition, in your recent post on Glass[d]oor, you

---

[2] Glassdoor is a website where employees anonymously review companies. Glassdoor, Wikipedia, https://en.wikipedia.org/wiki/Glassdoor (Dec. 7, 2024).

[3] Defendant did not dispute in his motion to dismiss that he was the author of the negative review.

A-0992-23

knowingly published to third parties false and defamatory statements about Sensor. . . .

The . . . statements . . . are false, known by you to be false, and improperly interfere with Sensor's business. . . . [Y]our post has grossly interfered with Sensor's ability to hire new employees . . . and has increased Sensor's costs to attract and retain new employees.

The letter went on to state that if defendant did not delete the post, "Sensor reserves all of its legal rights. Please note that such rights may include filing a lawsuit for defamation that seeks a court order compelling removal of the defamatory review, monetary damages, and attorneys' fees." Defendant refused to remove the post.

Plaintiffs subsequently filed a complaint alleging causes of action for defamation, trade libel, and tortious interference with prospective economic advantage. Defendant moved to dismiss. In March 2023, the trial court issued an order dismissing the defamation claim with prejudice, and dismissing the trade libel and tortious interference claims without prejudice.

Defendant subsequently filed a motion for reconsideration contending the trial court should have dismissed plaintiffs' trade libel and tortious interference claims with prejudice. Plaintiffs cross-moved for reconsideration as to their defamation claim, as well as leave to amend their complaint to attempt to

4

reinstate the trade libel and tortious interference claims. In July 2023, the trial court denied both parties' motions for reconsideration. Plaintiffs subsequently submitted a stipulation of dismissal in August 2023, dismissing "their action against [d]efendant in its entirety with prejudice."

In September 2023, defendant filed a motion for counsel fees as a prevailing party, pursuant to the employment agreement, and plaintiffs opposed the motion. On December 1, 2023, following oral argument, the court granted defendant's motion, finding defendant was a prevailing party. In finding that section six of the employment agreement was implicated by plaintiffs' complaint, the court noted:

> Plaintiff[s'] litigation was premised on [d]efendant breaching the [n]on-[c]ompete, [c]onfidentiality and [n]on-[s]olicitation [a]greement . . . that prohibited [d]efendant from disclosing confidential information about Sensor as defined in the [c]onfidentiality [a]greement. Pursuant to the [h]andbook, Sensor prohibited employees, after their employment ended with Sensor, from posting unfavorable or critical reviews on any website about Sensor's products and/or employees.
>
> . . . .
>
> While [p]laintiff[s] did not raise a claim of breach of contract in their [c]omplaint, it is evident from reading of the [c]omplaint that [p]laintiff[s] sought to enforce the [c]onfidentiality [a]greement signed by [d]efendant. In their August 20 letter, . . . [p]laintiff[s]

5

requested that [d]efendant remove the Glassdoor post or [p]laintiff[s] threatened to seek a court order compelling removal of the allegedly defamatory review, monetary damages, and attorneys' fees. Plaintiff[s] in this letter made it clear that recovering attorneys' fees was permissible because it was an action to enforce the [a]greement between the parties.

Plaintiff[s'] [c]omplaint alleged that [d]efendant had agreed to comply with the terms of the company's employee handbook, that [d]efendant signed the [c]onfidentiality [a]greement with [p]laintiff, and that [p]laintiff was enforcing the [a]greement because of [d]efendant allegedly writing unfavorable reviews of the company in violation of the employee handbook. Plaintiff[s'] [c]omplaint can be identified as enforcing the terms of the employee agreement and therefore [s]ection [six] of that [a]greement permits [d]efendant to recover reasonable [a]ttorneys' fees.

The court reduced the requested amount of fees from $33,795.57 to $21,130.57. Thereafter, plaintiffs appealed and defendant cross-appealed.

II.

Plaintiffs argue the trial court erred by granting attorney's fees to defendant based on a cause of action for breach of contract when no such claim was pled. They further contend defendant was not a "prevailing party," as no judgment was entered in defendant's favor.

"In the field of civil litigation, New Jersey courts historically follow the 'American Rule,' which provides that litigants must bear the cost of their own

6

attorneys' fees." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016) (quoting Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404 (2009) (Rivera-Soto, R., concurring)). "However, 'a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract.'" Litton Indus., Inc., 200 N.J. at 385 (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)). "[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Id. at 386 (quoting Collier, 167 N.J. at 444).

However, when the issues involve contract interpretation and the application of case law to the facts of the matter, our review is de novo. See Hutnick v. ARI Mut. Ins. Co., 391 N.J. Super. 524, 528 (App. Div. 2007); Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). Furthermore, although generally courts have significant discretion in making determinations regarding attorney's fees, such determinations are not entitled to any special deference if the judge "misconceives the applicable law, or misapplies it to the factual complex." Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)

A-0992-23

(quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"New Jersey law . . . permits parties to a contract to agree in advance to circumstances that may shift liability for attorneys' fees." McGuire v. Jersey City, 125 N.J. 310, 326 (1991). "However, because such contractual provisions conflict with the common-law preference for avoiding awards of fees, they are strictly construed by our courts." Id. at 326-27.

Plaintiffs contend defendant's motion for counsel fees was based on an inaccurate argument that their complaint sought to "enforce" the provisions of the employment agreement between the parties. They argue their complaint contains three counts—none of which includes a breach of contract or enforcement action. Plaintiffs acknowledge that "paragraphs [eleven] and [twelve] of the fact section of [the] [c]omplaint note[] that the agreement existed," however, the complaint did not assert a claim for breach or enforcement of the contract. They maintain they only sought damages for claims arising out of defendant's "tortious acts" and not to enforce the employment agreement. They argue the trial court erred in finding the complaint was "premised" on defendant's breach of the agreement and that it was "evident" from the complaint that plaintiffs were seeking to enforce the agreement.

A-0992-23

Defendant counters that the language of section six of the employment agreement "was intentionally worded extremely broadly and applies to more than mere breach of contract actions."  He relies on <u>Malick v. Seaview Lincoln Mercury</u>, for the proposition that "ambiguous terms are generally construed against the drafter of the contract."  398 N.J. Super. 182, 187 (App. Div. 2008).  He next argues that we should apply the canon of surplusage in interpreting the complaint to find "plaintiffs intended to invoke the [a]greements in their [c]omplaint in order to suggest defendant was in violation thereof."  Defendant notes plaintiffs referenced the contract in several paragraphs of the complaint under the "ALLEGATIONS COMMON TO ALL COUNTS" section and that "[t]hese repeated references in both the [c]omplaint as well as in the August 20[] letter" support the trial court's finding "that plaintiffs' purpose [for] submitting these documents was to enforce the terms of the [a]greements."

The trial court held that "it [was] evident from a reading of the [c]omplaint that [p]laintiff sought to enforce the [c]onfidentiality [a]greement signed by [d]efendant."  Relying on the August 20 letter from plaintiffs to defendant, the court found the document "made it clear that recovering attorneys' fees was permissible because it was an action to enforce the [a]greement between the parties."  Notwithstanding plaintiffs did not specifically plead a cause of action

for breach of contract, the court held that based on the complaint and plaintiffs' references to the letter and agreements, the pleading could "be identified as enforcing the terms of the . . . agreement and therefore [s]ection [six] of that [a]greement permits [d]efendant to recover reasonable attorneys' fees."

"At common law a plaintiff who had a contractual relationship with the defendant was able to sue in tort if the plaintiff could establish that the alleged breach of duty constituted a 'separate and independent tort.'" Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 309 (2001) (quoting Michael Dorff, Attaching Tort Claims to Contract Actions: An Economic Analysis of Contract, 28 Seton Hall L. Rev. 390, 407 (1997)). "Under New Jersey Law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Id. at 316 (citing New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 493-94 (App. Div. 1985)). Here, while the parties entered into an agreement that was enforceable by a breach of contract claim, plaintiffs were also permitted to sue in tort alleging defendant's conduct constituted a tort independent of the contractual relationship between the parties.

Claims that are founded on an independent obligation imposed by law are tort obligations. Ibid.[4]

This is not a situation where plaintiffs were trying to convert a basic contract claim into a tort action. Rather, plaintiffs proceeded with defamation, trade libel, and tortious interference with prospective economic advantage claims as opposed to pursuing a contract claim. Although plaintiffs could have asserted a breach of contract claim, they were permitted to advance a defamation claim which was extrinsic to the contract. Therefore, neither party was able to invoke the counsel fee provisions of the contract.

The parties had a contract stating that defendant was bound by the employee handbook, which stated he would not post "any unfavorable, or critical reviews on any websites" about plaintiffs. This is not the same as saying the employee will not defame the employer. Arguably, even if the statements in the Glassdoor post were true, they may have been in violation of the contract between the parties, but they would not give rise to a defamation claim. The duty not to defame another is one that exists regardless of any contractual

---

[4] In contrast, tort liability does not arise for claims based on failing to do what a person has agreed to do "in the absence of a duty to act apart from the promise made." Id. at 310 (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 92, at 656-58 (5th ed. 1984)).

A-0992-23

provision, and absent the non-disparagement agreement, plaintiffs still have a duty not to defame. W.J.A. v. D.A., 210 N.J. 229, 247 (2012). The court here erred in determining plaintiffs were attempting to enforce the contract. Plaintiffs were entitled to protection from the alleged tortious conduct, independent of the contract. That is, defendant owed a duty to plaintiffs outside of that promised in the agreements.

We conclude the trial court mistakenly awarded counsel fees when it determined plaintiffs' complaint was "premised" on defendant breaching the employment agreement. Although plaintiffs' complaint and August 2021 letter references the agreement, all their claims are based solely in tort. A plain reading of the complaint reveals there is no breach of contract action asserted. Rather, plaintiffs asserted claims based on defendant's alleged tortious conduct—defamation, trade libel, and tortious interference with prospective economic advantage—not based on his alleged breach of the employment agreement. In fact, the trial court acknowledged plaintiffs "did not raise a claim [for] breach of contract in their complaint." Defendant was no more entitled to attorney's fees than plaintiffs had they prevailed on their tort claims.

12

Because we conclude the court erred in its determination that plaintiffs' complaint was "premised" on a breach of contract claim, it was error to award attorney's fees.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0992-23